469 So.2d 381 (1985)
Alan M. MITCHELL, Plaintiff-Appellee,
v.
Doyle WINDHAM, et al., Defendants-Appellants.
No. 84-139.
Court of Appeal of Louisiana, Third Circuit.
May 15, 1985.
*382 Stafford, Stewart & Potter, Larry A. Stewart, Alexandria, for defendants-appellants.
J.P. Mauffray, Jr., Jena, for plaintiff-appellee.
Before DOMENGEAUX, DOUCET and YELVERTON, JJ.
*383 YELVERTON, Judge.
The plaintiff, Alan Mitchell, brought this suit seeking tort damages based on a wrongful arrest, false imprisonment, and the failure to provide necessary medical attention to a jail inmate. Made defendants were Doyle Windham, the Sheriff of LaSalle Parish, and his liability insurer, North River Insurance Company. From the granting of plaintiff's motion for summary judgment as to the issues of liability, and from a jury award of $10,605 in damages, the defendants appeal, urging that the summary judgment was improper, and arguing in the alternative that the award was excessive. We agree that the summary judgment was improper to the extent of its finding of liability based on a wrongful arrest, and we must remand for further proceedings as to that tort. We will not remand the rest of the case, because we have strong doubts as to whether plaintiff can prevail in his claim based on a wrongful arrest, and in the interest of avoiding a third trial on the remaining issues, including quantum, we shall decide them here, under the authority of Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
This case has a complex procedural history. It was originally tried by a jury on all issues of liability and quantum in March 1982. The jury rendered a verdict in favor of the defendants and a judgment was signed dismissing plaintiff's suit. Plaintiff immediately moved for a new trial, and asked that a directed verdict or summary judgment be granted in his favor as to the issue of liability. On April 26, 1982, the trial court signed a judgment granting a new trial and, in that same judgment directed a verdict in favor of the plaintiff on the issue of liability. The defendants appealed from that judgment. See our opinion Mitchell v. Windham, 426 So.2d 759 (La.App. 3rd Cir.1983). In that opinion we set aside the directed verdict in favor of the plaintiff and remanded the case to the trial court for the purpose of conducting the new trial, and for further proceedings according to law.
After remand, on October 7, 1983, the plaintiff filed a motion for summary judgment as to the issues of liability only. On October 25, 1983, the trial court granted and signed a summary judgment, based on the admissions of fact in the record and the sworn testimony from previous hearings and trials. On November 14, 1983, the case was tried by a jury, the jury issues being limited to whether the plaintiff was damaged and, if so, by how much. The jury's verdict awarded plaintiff $10,605. Judgment was signed on December 6, 1983. On December 20, 1983, defendants filed a "Motion and Order for Appeal" stating they were aggrieved by the December 6, 1983, judgment. An order for an appeal was granted on December 21, 1983. It is clear from the briefs that the defendants' appeal was regarded as having been taken from both the judgment granting the plaintiff's motion for summary judgment and the judgment of quantum; therefore, we shall review both judgments. See Dural v. City of Morgan City, 449 So.2d 1047 (La. App. 1st Cir.1984).
The issues presented by this appeal are 1) whether the trial court erred in granting the plaintiff's motion for summary judgment as to liability, and if not, 2) whether the award by the jury was excessive.
A summary judgment is appropriate only if the summary judgment evidence shows no genuine issue as to any material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Whitney v. Mallet, 442 So.2d 1361 (La.App. 3rd Cir.1983), writ denied 445 So.2d 437 (La.1984).
Concerning the facts of Mitchell's arrest, the extensive record contains considerable detail. Sheriff Windham testified at the March 1982 trial that on April 25, 1980, he received two phone calls from a sheriff in Oklahoma who advised him that the Oklahoma authorities had a felony warrant for Mitchell's arrest, that Mitchell was currently residing with his parents in Jena, Louisiana, and that the Oklahoma authorities wanted him to arrest Mitchell. Sheriff Windham told the Oklahoma authorities on *384 each occasion that he would arrest Mitchell once he received a teletype from them. The teletype was received, confirming that the Oklahoma authorities had a felony warrant for Mitchell's arrest charging him with taking mortgaged property out of the state and disposing of it, a felony in Oklahoma, and Sheriff Windham then ordered deputies Smith and Ashley to arrest the plaintiff.
Deputies Smith and Ashley testified that they arrested the plaintiff on April 25, 1980, on the instructions of Sheriff Windham. They stated that they advised plaintiff of his rights at arrest and that he was being arrested based on a felony warrant. Deputy Smith then further testified that Mitchell was advised of his rights again when he was booked in jail at 11:05 A.M. on that date.
Mitchell testified that when he was arrested the deputies advised him he was being arrested based on a warrant from Oklahoma, although they did not know the charge, and that Deputy Smith read him his rights. Plaintiff was informed of the charge the afternoon of his arrest.
Concerning plaintiff's detention in jail the record reveals that Mitchell was not brought before a judge until May 8, 1980. The sheriff testified that he thought Mitchell had been brought before a judge within 72 hours, as required by LSA-C.Cr.P. art. 230.1, and that there must have been a mistake in not taking him before the judge within that time.
The plaintiff also testified that he had informed the deputies that he had a medical appointment with an eye doctor on May 2. The appointment was for evaluation purposes only to see if his eye was ready for surgery. The deputies did not let him keep this appointment.
As this court stated in Johnson v. State through Dept. of P. Safety, 451 So.2d 104 (La.App. 3rd Cir.1984), writ denied, 457 So.2d 15 (La.1984):
"False imprisonment occurs when one is arrested and restrained against his will by another who acts without a warrant or other statutory authority. It is restraint without color of legal authority. Kyle v. City of New Orleans, 353 So.2d 969 (La.1977); Richard v. State, through Department of Public Safety, 436 So.2d 1265 (La.App. 1st Cir.1983), writ denied, 441 So.2d 1223 (La.1983). If a police officer acts pursuant to statutory authority in arresting and incarcerating a citizen, there is no false arrest or imprisonment. Kyle v. City of New Orleans, supra."
In Johnson, supra, the plaintiff was stopped and ticketed for speeding by Louisiana Trooper Sanders. Sanders requested a N.C.I.C. check. The N.C.I.C. printout showed that Leonard Johnson, Jr. was wanted by authorities in Bell County, Texas, on charges of aggravated prostitution. The physical description on Johnson's driving record was similar to the description provided by the N.C.I.C. printout. The date of birth was identical. Johnson was arrested by Trooper Sanders. After spending six days in jail, it was discovered that the incarcerated Johnson was not the wanted fugitive. He sued for false imprisonment. The trial court found reasonable cause to arrest the plaintiff and rendered judgment in favor of the defendants. This court stated:
"In the instant case, the authority for arresting the plaintiff is derived from LSA-C.Cr.P. Art. 213, which provides in pertinent part:
"A peace office may, without a warrant, arrest a person when:
. . . . .
"(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer; or
"(4) The peace officer has received positive and reliable information that another peace officer from this state holds an arrest warrant, or a peace officer of another state or the United States holds an arrest warrant for a felony offense."
*385 "In the instant case, Trooper Sanders had reasonable cause (provided by the N.C.I.C. printout) to believe that an offense had been committed. LSA-C.Cr.P. Art. 213(3), supra. The printout also provided Sanders with positive and reliable information that an arrest warrant from the State of Texas was outstanding on Leonard Johnson, Jr., LSA-C.Cr.P. Art. 213(4). The determinative inquiry thus becomes whether Sanders had reasonable cause to believe that the man he had stopped for speeding was in fact Leonard Johnson, Jr."
This court affirmed the trial court's in finding that reasonable cause existed to arrest plaintiff.
In the instant case the authority relied on by the appellants for arresting the plaintiff is derived from former C.Cr.P. art. 213, which provided in pertinent part:
"A peace officer may, without a warrant, arrest a person when:
* * * * * *
"(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense although not in the presence of the officer; or
"(4) The peace officer has received positive and reliable information that another peace officer holds a warrant for the arrest."
The trial court evidently concluded that former C.Cr.P. art. 213(4) was limited to peace officers holding a warrant from the State of Louisiana. Appellant argues that the language, "another peace officer", as used in former C.Cr.P. art. 213(4), included peace officers from other states holding warrants from other states for arrest. We agree.
Our opinion is that the amendment to Art. 213(4), which now provides "or a peace officer of another state", was merely intended to clarify the existing law, and was not intended to change the law. Also, C.Cr.P. art. 213(3) which provided then, and still does, that a peace officer may arrest a person without a warrant when he "has reasonable cause to believe that the person to be arrested has committed an offense although not in the presence of the officer" is not limited to offenses committed within the State of Louisiana. See Johnson, supra.
In the present case Sheriff Windham testified that he received two phone calls from a sheriff in Oklahoma informing him of an existing felony warrant from Oklahoma for plaintiff's arrest. The sheriff subsequently received a teletype printout revealing the existence of the felony warrant, and he ordered his deputies to arrest plaintiff. Under these facts it was not a wrongful arrest, and the trial court erred in granting plaintiff's motion for summary judgment as to liability for a wrongful arrest.
Plaintiff also argued that he was illegally detained in jail beyond the 72 hours provided for in C.Cr.P. art. 230.1 without being brought before a judge. That article provides in pertinent part as follows:
"A. The sheriff having custody of an arrested person shall bring him promptly, and in any case within seventy-two hours from the time of the arrest, before a judge for the purpose of appointment of counsel. Saturdays, Sundays, and legal holidays shall be excluded in computing the seventy-two hour period referred to herein. The defendant shall appear in person unless the court by local rule provides for such appearance by telephone or audio-video electronic equipment."
A person who is not brought before a judge within 72 hours of his arrest, as required by this article, has a claim for civil damages resulting from violation of the article's mandate. State v. Wallace, 392 So.2d 410 (La.1980).
In the present case plaintiff was arrested and booked in jail on April 25, 1980. He was not brought before a judge until he got a habeas corpus hearing on May 8, 1980. The sheriff admitted that the plaintiff should have been brought before a judge within 72 hours of his arrest, exclusive *386 of Saturday and Sunday, and that there was a "mistake" made in not bringing him before a judge. No formal extradition proceedings were ever initiated.
Although we have found no case law which states that an accused awaiting extradition is entitled to a hearing under Article 230.1, we find under the undisputed facts of this case that the plaintiff was entitled to such a hearing. The accused was clearly an "arrested person" within the meaning of Article 230.1.
For these reasons we find that the trial judge was correct in granting summary judgment as to plaintiff's claim for illegal detention beyond the 72 hours as provided by Article 230.1.
Since we have determined that plaintiff is entitled to civil damages for detention beyond 72 hours without being brought to a judge, we find that the damage, if any, he suffered as a result of missing his medical appointment for evaluation of his eye condition would be included within that award.
Plaintiff alleged three separate causes of action. We have determined that he is entitled as a matter of law to any damages resulting from his illegal detention beyond 72 hours as provided by C.Cr.P. art. 230.1, including damages resulting from a denial of medical needs. To this extent we affirm the summary judgment finding liability. The parties had a jury trial as to quantum on November 14, 1983. However, the jury was instructed that the defendant was liable for any damages resulting from a false arrest, false imprisonment, and for denial of reasonable medical needs. The instructions regarding the false arrest were in error, because we have determined that the trial judge erred in granting plaintiff's motion for summary judgment as to that claim. The issue of damages based on the other two claims was properly presented to the jury. We do not need to remand the entire case. Since this court has all the facts before it as to damages resulting from the illegal detention beyond 72 hours in violation of Article 230.1 and for the denial of reasonable medical needs, this case does not warrant a remand as to these issues. See Gonzales v. Xerox Corporation, supra; and Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La.1980). We will therefore render a judgment as to quantum based on the illegal detention beyond 72 hours.
The jury in its finding of damages did not itemize the amount of damage suffered by plaintiff as a result of the alleged wrongful arrest, the amount suffered as a result of the illegal detention beyond 72 hours, and the amount suffered by him as a result of not being able to keep his medical appointment. We will make these determinations based on the record alone.
The record reveals that plaintiff was illegally detained in jail for a period of 10 days in violation of the mandate of C.Cr.P. art. 230.1. He was unemployed at the time. He was not unaccustomed to jails, having been incarcerated several earlier times for other offenses. The plaintiff testified that the toilets were stopped up and the odor was terrible. Plaintiff also testified that he had a medical appointment for evaluation purposes to determine if his eye was ready for surgery. The plaintiff stated that he made another appointment shortly after his release, and eventually had surgery on his eye. He presented no medical evidence that the condition of his eye worsened as a result of not keeping his first appointment. The appointment was not for treatment of the eye.
Based on this evidence we find that the plaintiff failed to prove any damage as a result of failing to keep his medical appointment. We will award the plaintiff the sum of $2,000 including special damages for the illegal detention beyond the 72 hours mandated by art. 230.1.
For these reasons, the summary judgment in favor of the plaintiff, Alan Mitchell, finding defendants, Doyle Windham and North River Insurance Company, liable for false arrest is reversed and set aside; the summary judgment, insofar as it found defendants liable for an illegal detention, *387 and for any damages suffered as a result of being denied medical attention, is affirmed; the verdict of the jury is reversed and set aside; judgment is rendered in favor of plaintiff for $2,000, with interest; the rest of the case is remanded for further proceedings; costs of this appeal will be borne equally by both sides.
AFFIRMED IN PART; REVERSED IN PART; RENDERED IN PART; AND REMANDED.