| JAMES L. CANNELLA, Judge.
In this personal injury case, Plaintiff, Gail Cloy, appeals from the judgment of the trial court which dismissed her case against Defendants, Sheriff Harry Lee and Deputies Chad Gautreaux and Isaac McPherson. For the reasons which follow, we affirm.
On April 18, 1998, Deputy Gautreaux responded to a 911 call from Plaintiffs residence. Plaintiffs niece, Nadine Lagrange (Lagrange), had witnessed an argument between Plaintiff and her daughter. Following the argument, Plaintiff was very upset so she packed some clothing, a picture of her deceased husband, and some prescription medication and told the family that she was leaving to join her husband. She placed her belongings in her car and attempted to leave home. Lagrange became very upset and attempted to stop *902 Plaintiff from leaving. In Plaintiffs attempt to back out of the garage and avoid Lagrange’s vehicle, she scraped her automobile on the track for the garage door which protruded from the garage door frame. Plaintiff left in her automobile. Lagrange placed the 911 emergency call and reported it as an attempted suicide.
laWhen Deputy Gautreaux arrived at the residence, he realized that he had been there before on another suicide alert. He spoke briefly with Lagrange when Plaintiff drove past the house in her automobile. Deputy Gautreaux returned to his vehicle and drove after Plaintiff. He turned on his lights and siren and called to Plaintiff on the loud speaker, instructing her to pull over. She did not pull over but instead, for about five minutes, drove through the neighborhood with Deputy Gautreaux behind her. Next, she returned home, parked her vehicle and went inside into the kitchen. Deputy ■ Gautreaux followed Plaintiff inside. Another Deputy remained outside and looked in the vehicle which Plaintiff was driving and found a large quantity of prescription medication and a picture of Plaintiffs deceased husband. In the kitchen, Deputy Gautreaux spoke with Plaintiff and, in his view, she responded irrationally. He informed Plaintiff that she needed a psychiatric evaluation. She did not agree. Emergency Medical Technicians (EMTs) arrived on the scene. Officer Gautreaux informed Plaintiff that she could either go with the EMTs voluntarily or he would take her to the hospital. She refused to go with the EMTs and they left. Then, in accordance with department policy, the two deputies restrained Plaintiff by handcuffing her hands behind her back. They then walked her through the house and out into the garage. Following inquiry by Plaintiff, she was informed that the deputies were taking her to Charity Hospital. She did not want to go there so she stopped walking and “plopped” down on the ground in a sitting position. Deputy Gautreaux testified that he told her that if she did not get up the deputies would carry her to the car. She refused to get up. When the two deputies attempted to lift her, one holding her arms near the armpits and the other holding her ankles, she struggled and moved about, causing the deputies to put her back down. | ¿Plaintiff claims that they dropped her. She was in a prone position screaming that her back hurt. Officer Gautreaux called for a supervisor to come to the scene. Lieutenant Jamie Monfra’s arrived and another ambulance was called to the scene. Plaintiff was unhandcuffed and taken by ambulance to the hospital.
On April 15, 1999, Plaintiff filed suit against the Defendants, alleging that the deputies’ misconduct caused injuries to Plaintiffs back. The trial was bifurcated and the liability issue went to trial on April 11, 2001. After the parties rested, the trial court rendered a verdict on May 6, 2001 in favor of the Defendants, dismissing the action with prejudice. In so ruling, the trial judge stated that “the police officers acted reasonable [sic] under the circumstances existing on the date of the incident, therefore the Court also finds that the plaintiff failed to meet her burden of proof, therefore the Court dismissed plaintiffs case, at her cost.” It is from this judgment that Plaintiff appeals.
On appeal Plaintiff argues that the trial court’s determination, that the force used was reasonable under the circumstances, was clear error. Plaintiff argues that she proved that the deputy’s decision to take her involuntarily was improper under department policy and that the officer used excessive force in attempting to transport her to the hospital. Thus, she argues that the trial court erred in finding no liability on the part of Defendants.
The Defendants argue to the contrary that the trial court’s decision is neither *903 manifestly erroneous nor clearly wrong in its determination that Deputies Gautreaux and McPherson did not use excessive force and were not negligent during their encounter with Plaintiff, who was belligerent, uncooperative and potentially suicidal and was properly taken into protective custody.
|sIt is well settled that, on appellate review of a factual determination, the reviewing court may not set aside the fact-finder’s findings of fact in the absence of manifest error or unless they are clearly wrong. Also, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State through DOTD, 617 So.2d 880 (La.1993). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra.
When findings are based on determinations regarding the credibility of witnesses, the manifest error or clearly wrong standard demands great deference to the trier of fact’s findings, for only the factfin-der can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Canter, supra at 724; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La.1987); Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Williams v. Keystone General Contractors, Inc., 488 So.2d 999, 1001 (La.1986); Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La.1984); Berry v. Livingston Roofing Co., 403 So.2d 1247, 1249 (La.1981); Crump v. Hartford Accident & Indemnity Co., 367 So.2d 300, 301 (La.1979).
[ ^Applying this standard of review to the case before us, we find no manifest error in the trial court findings that Officer Gau-treaux acted properly in concluding that Plaintiff should be brought to the hospital for a psychiatric evaluation and that he and Deputy McPherson did not use excessive force in this attempt to bring her to the hospital.
The Sheriff Department’s policy for taking a person into protective custody for transport to a treatment facility for a medical evaluation, admitted as an exhibit during the trial, is basically a recitation of La. R.S. 28:53(K), the law authorizing such a seizure of a person. La. R.S. 28:53(K) and the Sheriff Department’s policy authorizes a peace officer to take a person into custody involuntarily to transport observation by the officer, the officer has reasonable grounds to believe the person is acting in a manner dangerous to himself or others and is in need of immediate hospitalization to protect such a person or others from physical harm.
Concerning Deputy Gautreaux’s decision that Plaintiff should be taken into protective custody for a psychiatric evaluation, he testified that he based his determination on several factors. He had been told by Lagrange that Plaintiff had said that she was going to be with her deceased husband and that they wouldn’t find her body. His personal observations included having been to the house before on a suicide call involving Plaintiff. He observed that she had damaged the garage in her attempt to back out of the garage, which indicated to the officer some degree of bad judgment. He followed her for several minutes with his lights and siren on, giving *904 instructions that she pull over and she completely ignored him. She returned to her house with him following her and she just walked inside. She had packed her belongings, including the picture of her 17deceased husband and a large amount of prescription medication. She was speaking in an irrational manner and her overall behavior in general was peculiar. Based on the cumulation of these facts, clearly there was no error in the trial court’s conclusion that the officer’s decision that Plaintiff should be brought to the hospital for a psychiatric evaluation was properly made in accord with law and the department policy.
Plaintiff contends that Officer Gautreaux acted inappropriately in concluding that she should be admitted to the hospital because he relied on the statements of Lagrange. Plaintiff contends that had Deputy Gautreaux adequately investigated the matter, he would have found out that Lagrange’s observations were tainted by her father’s suicide. We disagree.
As set out in detail above, Officer Gau-treaux had personal knowledge of several facts that amply supported his decision to require Plaintiff to undergo a psychiatric evaluation. He had previously been called to that house for a suicide threat by Plaintiff and his partner observed a large quantity of prescription drugs in Plaintiffs vehicle. Those two facts, coupled with the deputy’s observation of several instances of Plaintiffs erratic behavior, provide ample record support for the trial court finding that the officer acted reasonably. Deputy’s Gautreaux’s decision was within the Jefferson Parish Sheriffs Office policy guidelines.
Next, Plaintiff argues that the trial court erred in not finding that the officers used excessive force in attempting to get Plaintiff into the police vehicle for transportation to the hospital. We find that the record does not support this contention by Plaintiff.
Deputy Gautreaux testified that he spoke with Plaintiff in the kitchen and gave her the choice of going voluntarily with the EMTs or going with him. She | ^refused to go with the EMTs. He testified that he then told her that she would have to be handcuffed. Although Plaintiff and her daughter testified that they told the officer not to handcuff Plaintiff behind her back because of a back problem, Deputy Gautreaux denied that he was told this. He stated that, as a matter of policy, everyone taken into custody is handcuffed with their hands behind their back. He handcuffed Plaintiffs’ hands behind her back and he testified that they walked out of the house without incident. It was only after Plaintiff asked where he was taking her and he answered Charity Hospital that she began to resist. She sat on the floor of the garage and refused to get up. Deputy Gautreaux testified that he again gave her the choice of coming freely or being forced or carried. She refused to get up. At that time, the two officers attempted to pick up the Plaintiff and carry her to the police unit. When they lifted her she began to struggle and turn about. Deputy Gautreaux testified that they put her back down on the ground and she started screaming about pain to her neck and back. Plaintiff and her daughter testified that the officers dropped her. Deputy Gautreaux expressly denied this. Deputy Gautreaux called his supervisor, who came to the scene and found no irregularities. Because Plaintiff was indicating that she was experiencing pain, a second ambulance was called to the scene and Plaintiff was unhandcuffed and taken to the hospital by ambulance.
The trial judge was presented with some discrepancies in the stories concerning the events of the evening and he was required *905 to make a credibility determination. No doubt, his decision was influenced by the testimony of Lagrange, who testified that Plaintiff was argumentative, that they tried to convince her to go to the hospital willingly and she refused, and that she saw no wrongdoing by the officers on the night of the incident.
| gPlaintiff relies on three case in support of her argument that the officers in this case used excessive force against her: Kyle v. City of New Orleans, 353 So.2d 969 (La.1977), LaBauve v. State, 618 So.2d 1187 (La.App. 3rd Cir.5/12/93), and Saucier v. Players Lake Charles, LLC, 99-1196 (La.App. 3rd Cir.12/22/99), 751 So.2d 312. LaBauve involved a finding of excessive force where and officer forced a 76 year old motorist, suspected of drunken driving, to lie face down on the ground in jagged rocks and gravel, in order to handcuff him. Saucier involved a finding of excessive force against security guards who forcibly removed a drunken patron by handcuffing him and dragging him down three flights of stairs even though he volunteered to leave peacefully. Additionally in Kyle, which set out several factors to be considered in an excessive force review, the Supreme Court applied a reasonable standard determined by the totality of the circumstances, noting:
Whether the force used is reasonable depends upon the totality of the circumstances in each cáse. A court must evaluate the officers’ actions against those of ordinary, prudent, and reasonable men placed in the same position as the officers and with the same knowledge as the officers.
Kyle v. City of New Orleans, 353 So.2d 969, 973.
We do not find any of these cases supportive of Plaintiffs position herein. Applying the reasonableness standard of Kyle to this case, we find that the “force” used by the officers was necessitated by the Plaintiffs refusal to voluntarily go with the EMTs or to get into the police unit voluntarily, when she sat down on the garage floor and refused to get up. The officers only “forceful” action was their attempt to lift Plaintiff and carry her to the police unit to get her the medical assistance that she was deemed to need. Therefore, after reviewing | ,nthe record and applicable law, we find that the factfinder’s conclusion, which involved a credibility determination by the trial judge, that the officers did not use excessive force under the circumstances, was a reasonable one.
Accordingly, for the foregoing reasons, we find no error in the trial court judgment dismissing the Plaintiffs case against the Defendants and we affirm that judgment. Costs of appeal are assessed against Plaintiff.
AFFIRMED.